# EXHIBIT B

# EXHIBIT B1

<u>**CERTIFICATE OF ELECTRONIC TRANSMISSION**</u>

I hereby certify that this correspondence is being
electronically transmitted via EFS-WEB on December 3,
2008.

/David E. Jefferies/       December 3, 2008
David E. Jefferies           Date
Reg. No, 46,800

## <u>IN THE UNITED STATES PATENT AND TRADEMARK OFFICE</u>

| | |
|---|---|
| Serial No.: | 11/380,762 |
| Filed: | April 28, 2006 |
| Examiner: | David J. Joy |
| Confirmation No.: | 3139 |
| Art Unit: | 1794 |
| Applicant[s]: | Jean-Paul Laprade |
| Title: | **Heat Transfer Label** |
| Atty. Doc.: | MUCC-73 |

Cincinnati, Ohio     45202                  December 3, 2008

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## <u>RESPONSE TO OFFICE ACTION AND AMENDMENT</u>

This paper is responsive to the Office Action mailed on September 3,

2008.

**Amendments to the Claims** are reflected in the Listing of Claims, which

begins on page 2 of this paper.

**Remarks** begin on page 8 of this paper.

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Response to Office Action and Amendment
Attorney Docket No. MUCC-73

## Listing of Claims

1. (Original) A heat transfer label comprising:

(a) a support portion;

(b) a transfer portion over said support portion for transfer of the transfer portion, from the support portion to an article that has not undergone an oxidizing treatment, upon application of heat to the support portion while the transfer portion is placed into contact with the article, said transfer portion including an adhesive layer comprising a vinyl acetate resin, a tackifying petroleum hydrocarbon resin, and a microcrystalline wax.

2. (Presently Amended) The heat transfer label of claim 1, wherein said vinyl acetate resin is an ethylene vinyl acetate resin further comprising [[a]] 39-42% vinyl acetate resin which is soluble in organic solvents and has a bulk density of about 30 lb/ft$^3$, a ring and ball softening point of about 200 °C, and a melt index of 48-66 grams per 10 minutes.

3. (Presently Amended) The heat transfer label of claim 2, wherein said vinyl acetate resin is ~~ELVAX®-40-W~~ 70% of said adhesive layer.

- 2 -

MUCC000135

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Response to Office Action and Amendment
Attorney Docket No. MUCC-73

4. (Original) The heat transfer label of claim 1, wherein said vinyl acetate resin is an ethylene vinyl acetate resin having a vinyl acetate content of between 18 and 42 percent.

5. (Original) The heat transfer label of claim 4, wherein said tackifying petroleum hydrocarbon resin has a Tg range of between 30°C and 85°C.

6. (Original) The heat transfer label of claim 1, wherein said tackifying petroleum hydrocarbon resin has a Tg range of between 30°C and 85°C.

7. (Presently Amended) The heat transfer label of claim 1, wherein said tackifying petroleum hydrocarbon resin ~~further comprises Escorez 1315~~ is 25% of said adhesive layer.

8. (Presently Amended) The heat transfer label of claim 3, wherein said tackifying petroleum hydrocarbon resin ~~comprises Escorez 1315~~ is 25% of said adhesive layer.

9. (Original) The heat transfer label of claim 1, wherein said microcrystalline wax further includes a melting point of 150-180°F, a hardness of greater than 10 dmm at 77°F, and is 30-60% normal paraffins.

- 3 -

MUCC000136

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Response to Office Action and Amendment
Attorney Docket No. MUCC-73

10. (Presently Amended) The heat transfer label of claim 9, wherein said microcrystalline wax is ~~Victory White~~ 5% of said adhesive layer.

11. (Presently Amended) The heat transfer label of claim 8, wherein said microcrystalline wax is ~~Victory White~~ 5% of said adhesive layer.

12. (Original) The heat transfer label of claim 1, wherein said transfer portion further comprises a protective lacquer layer.

13. (Original) The heat transfer label of claim 12, wherein said protective lacquer layer further comprises a hard polyester or acrylic resin being a copolyester resin having a high tensile strength of 8000 psi, a low elongation of 7%, a 79 D scale Shore Durometer hardness, and a 156°C ring and ball melt flow point.

14. (Original) The heat transfer label of claim 12, wherein said transfer portion further comprises a release agent and at least one of a hard polyester resin and an acrylic resin.

15. (Original) The heat transfer label of claim 14, wherein said release agent is a surfactant or a wax.

- 4 -

MUCC000137

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Response to Office Action and Amendment
Attorney Docket No. MUCC-73

16. (Original) The heat transfer label of claim 15, wherein said release agent is selected from the group consisting of dioctyl sodium sulfosuccinate in mineral seal oil, ethoxylated alcohol, and carnauba wax.

17. (Original) The heat transfer label of claim 16, wherein said release agent is carnauba wax.

18. (Original) The heat transfer label of claim 12, further comprising an ink layer proximal to said protective lacquer layer.

19. (Original) The heat transfer label of claim 18, said ink layer comprising a resin chosen from a polyamide, a polyester, a vinyl, and an acrylic.

20. (Original) The heat transfer label of claim 19, wherein said ink layer comprises a polyamide resin, and said polyamide resin is a clear alcohol soluble polyamide resin based on dimerized vegetable acid and aliphatic polyamines and having a Brookfield viscosity at 160°C of 4-7 poise, a softening point of 105-115°C and a Gardner color (maximum) of 7.

21. (Presently Amended) The heat transfer ~~lasbel~~ label of claim 1, further comprising a release layer ~~wax-like skim coat~~ interposed between said support portion and said

- 5 -

MUCC000138

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Response to Office Action and Amendment
Attorney Docket No. MUCC-73

transfer portion, the release layer chosen from a wax release layer having wax in an amount of 6 to 8 pounds per ream, or a non-wax release layer including a wax skim coat in the amount of 0.25 to 1.00 pound per ream.

22. (Original) The heat transfer label of claim 1, wherein said support portion includes a sheet of paper.

23. (Original) The heat transfer label of claim 22, wherein said support portion comprises one-sided clay-coated paper.

- 6 -

MUCC000139

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Response to Office Action and Amendment
Attorney Docket No. MUCC-73

24. (Presently Amended) An adhesive composition comprising:

    (a) a vinyl acetate resin;

    (b) a tackifying petroleum hydrocarbon resin; and

    (c) a microcrystalline wax, wherein said microcrystalline wax comprises less than

30 weight percent of said composition.

MUCC000140

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Response to Office Action and Amendment
Attorney Docket No. MUCC-73

## REMARKS

Following this response, claims 1-24 are pending in the application. Claims 1-24 are presently rejected by the Examiner. Claims 2, 3, 7, 8, 10, 11, 21, and 24 are presently amended. In view of the amendments and the discussion below, it is submitted that the application is now in condition for allowance.

### Claim Objections

The Examiner has objected to claim 2 for language informalities. In particular, the Examiner notes that the second line of claim 2 recites, "resin further comprising a 39-42% vinyl acetate resin." In response, Applicant has presently amended claim 2 to now recite, "resin further comprising 39-42% vinyl acetate resin," as suggested by the Examiner. In view thereof, Applicant respectfully requests a withdrawal of the objection to claim 2.

### Claim Rejections 35 U.S.C. § 112, Second Paragraph

The Examiner has rejected claims 3, 7, 8, 10, 11, and 21 under 35 U.S.C. § 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which Applicant regards as the invention.

In particular, regarding claims 3, 7, 8, 10, and 11, the Examiner has rejected these claims for the inclusion of a trademark therein. The Examiner states that the use of a trademark renders the claim indefinite because the relationship between the trademark and the product it identifies is sometimes indefinite, uncertain, and

- 8 -

MUCC000141

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Response to Office Action and Amendment
Attorney Docket No. MUCC-73

arbitrary. In response, Applicant has presently amended each of claims 3, 7, 8, 10, and

11 to remove the trademarks recited therein, and instead, add features of the invention.

Support for the amendment of claims 3, 7, 8, 10, and 11 can be found at least at page

15, lines 20-21, of the present application. In view thereof, Applicant respectfully

requests a withdrawal of the rejection of claims 3, 7, 8, 10, and 11 as indefinite under 35

U.S.C. § 112, second paragraph.

The Examiner has further rejected claim 21 for the use of the term "wax-

like." In response, Applicant has presently amended claim 21 to remove the term "wax-

like." In view of this amendment, Applicant respectfully requests a withdrawal of the

rejection of claim 21 as indefinite under 35 U.S.C. § 112, second paragraph. Applicant

has further amended claim 21 to recite "a release layer . . . chosen from a wax release

layer having wax in an amount of 6 to 8 pounds per ream, or a non-wax release layer

including a wax skim coat in the amount of 0.25 to 1.00 pound per ream." Support for

this amendment may be found at least at page 3, line 13, and page 8, line 1, of the

application.

### Claim Rejections 35 U.S.C. § 102

The Examiner has rejected claims 1, 4-12, 18, 19, 22, and 24 under 35

U.S.C. § 102(b) as being anticipated by U.S. Patent No. 4,557,964 (Magnotta). In

particular, the Examiner states that Magnotta teaches a heat transfer label that

comprises a support, which can be a sheet of paper, and an adhesive composition that

- 9 -

MUCC000142

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Response to Office Action and Amendment
Attorney Docket No. MUCC-73

is included in a layer (being a "release coating") that comprises a vinyl acetate resin, a

tackifying petroleum hydrocarbon resin, and a microcrystalline wax (citing the abstract,

column 3, lines 62 through column 4, line 6; and column 4, line 45 through column 5,

line 29). Applicant respectfully disagrees.

As an initial matter, Applicant notes that of claims 1, 4-12, 18, 19, 22, and

24 rejected by the Examiner, only claims 1 and 24 are independent.  Independent claim

1 is directed to a heat transfer label including a support portion and a transfer portion,

wherein the transfer portion includes an adhesive layer having (1) a vinyl acetate resin,

(2) a tackifying petroleum hydrocarbon resin, and (3) a microcrystalline wax.

Independent claim 24 is directed to an adhesive composition including these

components, and wherein the microcrystalline wax comprises less than 30% by weight

of the composition.

Magnotta is directed to a heat transferable laminate, and particularly to an

improved release layer therefor.  The release layer is described as containing a

crystalline wax and a tackifying agent.  This release layer is what the Examiner points to

as anticipating the adhesive layer recited in the claims.  Magnotta particularly describes

a carrier web (e.g., a paper or a plastic sheet), with the heat transferable laminate

disposed thereon, and to be released therefrom.  The release layer pointed to by the

Examiner lies directly adjacent the carrier web, with layers of the heat transferable

laminate disposed on the side of the release layer that is opposite the carrier web.  For

- 10 -

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Response to Office Action and Amendment
Attorney Docket No. MUCC-73

example, an ink layer may be disposed on top of the release layer, and an optional adhesive layer may be disposed on top of the ink layer. In other words, in Magnotta, the release layer lies <u>between</u> the carrier web and the heat transferable laminate. The release layer of Magnotta includes a very high wax content so that as the laminate is brought into contact with an article, it releases from the carrier web and adheres to the article (although this adhesion does <u>not</u> result from the release layer pointed to by the Examiner).

 In other words, the composition (i.e., the release layer) pointed to by the Examiner is not an "adhesive layer," as is recited in independent claim 1. In fact, as the layer of Magnotta is a <u>release layer</u>, it is important that the layer of Magnotta <u>not have any adhesive qualities</u>. <u>The entire purpose</u> of the layer in Magnotta is to allow the laminate to <u>release from</u> the carrier web. If the release layer were to have adhesive qualities (i.e., if it were indeed an "adhesive layer"), then it would cause the laminate to <u>adhere to</u> the carrier web. In such a circumstance, it <u>would not release</u> therefrom, and the laminate would be <u>worthless</u>, as it could <u>not</u> be used.

 By contrast, in the heat transfer label of the present claims, the adhesive layer (which includes the vinyl acetate resin, tackifying petroleum hydrocarbon resin, and microcrystalline wax) is directly adjacent an article once the heat transfer label has been applied to the article. The ink layer then overlies the adhesive layer with the adhesive layer being disposed between the ink and the bottle. In this configuration, the

- 11 -

MUCC000144

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Response to Office Action and Amendment
Attorney Docket No. MUCC-73

adhesive layer causes the label to be adhered to the article. Thus, it is an "adhesive layer," as recited in independent claim 1, unlike Magnotta, which does not teach the recited "adhesive layer." Thus, as Magnotta does not teach an adhesive layer as recited in independent claim 1, Applicant submits that Magnotta does not anticipate independent claim 1 of the present application. Further, as independent claim 1 is not anticipated, Applicant further submits that claims 4-12, 18, 19, and 22 (each of which depend ultimately from claim 1) are also not anticipated by Magnotta.

Turning now to the rejection of independent claim 24 as anticipated by Magnotta: Independent claim 24 has been presently amended to recite an adhesive composition comprising a vinyl acetate resin, a tackifying petroleum hydrocarbon resin, and a microcrystalline wax "wherein said microcrystalline wax comprises less than 30 weight percent of said composition." Support for this amendment may be found throughout the specification, which particularly describes a heat transfer label that has two portions, (1) a support portion, and (2) a transfer portion. The transfer portion includes an adhesive layer comprising the components of the vinyl acetate resin, tackifying petroleum hydrocarbon resin, and microcrystalline wax. As is described throughout the specification, this adhesive layer is used to bond the transfer portion (i.e., that portion of the label removed from the support portion and applied to an article) to an article. Thus, the wax in this adhesive layer must be of low percentages in order for the adhesive layer to exhibit its adhesive properties. Were the wax content to be

- 12 -

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Response to Office Action and Amendment
Attorney Docket No. MUCC-73

high (as it is in the release layer of Magnotta), the adhesive quality would be lost, the label would not adhere to an article, and the function of the heat transfer label of the present application would be destroyed.

In particular, one embodiment of the adhesive composition is described at page 15, lines 19-21, as including 5% wax. Magnotta, on the other hand, at column 10, lines 56-67, describes the wax content of its release layer. There, Magnotta describes that paraffin wax is present in a range of 15-30% by weight (preferably 20-25% by weight) and montan wax is present in a range of 15-35% by weight. Thus, Magnotta describes a release layer (i.e., a layer that does <u>not</u> have adhesive qualities) that includes a wax content of 30-65% wax by weight. Thus, Applicant submits that Magnotta does anticipate independent claim 24, which claims an adhesive composition including less than 30% by weight microcrystalline wax.

In view of the above, Applicant respectfully requests a withdrawal of the rejection of claims 1, 4-12, 18, 19, 22, and 24 under 35 U.S.C. § 102(b) as anticipated by Magnotta.

## Claim Rejections 35 U.S.C. § 103

The Examiner has rejected claims 2 and 3 under 35 U.S.C. § 103(a) as being unpatentable over Magnotta in view of U.S. Patent No. 5,685,758 (Paul). Applicant respectfully disagrees.

- 13 -

MUCC000146

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Response to Office Action and Amendment
Attorney Docket No. MUCC-73

In order to establish a prima facie case of obviousness, the Examiner

must show that the cited references, as combined, teach or suggest each of the

elements of the claims. Claims 2 and 3 ultimately depend from independent claim 1,

and thus incorporates the limitations of independent claim 1. At least for the reasons

discussed above, Magnotta does not teach or suggest each and every element of

independent claim 1. Further, Applicant submits that Paul fails to teach the elements of

independent claim 1 that are missing from Paul. More specifically, Applicant submits

that, like Magnotta, Paul does not teach or suggest a laminate including an adhesive

layer as described and claimed in the present application (i.e., including a vinyl acetate

resin, a tackifying petroleum hydrocarbon resin, and a microcrystalline wax). Thus, it is

submitted that any combination of Magnotta and Paul does not show each and every

limitation of claim 3, as that claim is ultimately dependent from independent claim 1.

Accordingly, Applicant respectfully requests a withdrawal of the Examiner's rejection of

claims 2 and 3 under 35 U.S.C. § 103(a) as unpatentable over Magnotta in view of Paul.

The Examiner has further rejected claims 12-22 under 35 U.S.C. § 103(a)

as being unpatentable over Magnotta in view of U.S. Patent No. 5,908,694 (Makar).

Applicant respectfully disagrees.

In order to establish a prima facie case of obviousness, the Examiner

must show that the cited references, as combined, teach or suggest each of the

elements of the claims. Claims 12-22 ultimately depend from independent claim 1, and

- 14 -

MUCC000147

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Response to Office Action and Amendment
Attorney Docket No. MUCC-73

thus incorporates the limitations of independent claim 1. At least for the reasons discussed above, Magnotta does not teach or suggest each and every element of independent claim 1. Further, Applicant submits that Makar fails to teach the elements of independent claim 1 that are missing from Makar. More specifically, Applicant submits that, like Magnotta, Makar does not teach or suggest a laminate including an adhesive layer as described and claimed in the present application (i.e., including a vinyl acetate resin, a tackifying petroleum hydrocarbon resin, and a microcrystalline wax). Thus, it is submitted that any combination of Magnotta and Makar does not show each and every limitation of claims 12-22, as those claim is ultimately dependent from independent claim 1. Accordingly, Applicant respectfully requests a withdrawal of the Examiner's rejection of claims 12-22 under 35 U.S.C. § 103(a) as unpatentable over Magnotta in view of Makar.

      Finally, the Examiner has rejected claims 22 and 23 under 35 U.S.C. § 103(a) as being unpatentable over Magnotta in view of U.S. Patent No. 4,935,300 (Parker). Applicants respectfully disagree.

      In order to establish a prima facie case of obviousness, the Examiner must show that the cited references, as combined, teach or suggest each of the elements of the claims. Claims 22 and 23 ultimately depend from independent claim 1, and thus incorporates the limitations of independent claim 1. At least for the reasons discussed above, Magnotta does not teach or suggest each and every element of

- 15 -

MUCC000148

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Response to Office Action and Amendment
Attorney Docket No. MUCC-73

independent claim 1. Further, Applicant submits that Parker fails to teach the elements of independent claim 1 that are missing from Parker. More specifically, Applicant submits that, like Magnotta, Parker does not teach or suggest a laminate including an adhesive layer as described and claimed in the present application (i.e., including a vinyl acetate resin, a tackifying petroleum hydrocarbon resin, and a microcrystalline wax). Thus, it is submitted that any combination of Magnotta and Parker does not show each and every limitation of claim 3, as that claim is ultimately dependent from independent claim 1. Accordingly, Applicant respectfully requests a withdrawal of the Examiner's rejection of claims 22 and 23 under 35 U.S.C. § 103(a) as unpatentable over Magnotta in view of Parker.

**Conclusion**

For the foregoing reasons, it is submitted that all claims are patentable, and a Notice of Allowance is respectfully requested.

No fee is believed due. Any deficiencies or credits necessary to complete this communication should be applied to Deposit Account No. 23-3000.

The Examiner is invited to contact the undersigned attorney with any questions or remaining issues.

Respectfully submitted,
WOOD, HERRON & EVANS, L.L.P.

By:/David E. Jefferies/
David E. Jefferies, Reg. No. 46,800

- 16 -

MUCC000149

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 4385686 |
| **Application Number:** | 11380762 |
| **International Application Number:** | |
| **Confirmation Number:** | 3139 |
| **Title of Invention:** | HEAT TRANSFER LABEL |
| **First Named Inventor/Applicant Name:** | Jean-Paul Laprade |
| **Customer Number:** | 26875 |
| **Filer:** | David Eric Jefferies/Ginger Graff Grammer |
| **Filer Authorized By:** | David Eric Jefferies |
| **Attorney Docket Number:** | MUCC-73 |
| **Receipt Date:** | 03-DEC-2008 |
| **Filing Date:** | 28-APR-2006 |
| **Time Stamp:** | 11:12:07 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Amendment/Req. Reconsideration-After Non-Final Reject | MUCC-73_Response_and_Amendment.pdf | 67844<br>0faeef16a59fcb4e431d43c409c3f45e0860 2e34 | no | 16 |

**Warnings:**

**Information:**

MUCC000150

| | Total Files Size (in bytes): |  | 67844 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable.  It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

MUCC000151

# EXHIBIT B2

<u>CERTIFICATE OF ELECTRONIC TRANSMISSION</u>

I hereby certify that this correspondence is being
electronically transmitted via EFS-WEB on April 30,
2009.

/David E. Jefferies/        April 30, 2009
David E. Jefferies               Date
Reg. No, 46,800

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Serial No.:          11/380,762
Filed:             April 28, 2006
Examiner:        David J. Joy
Confirmation No.:    3139
Art Unit:          1794
Applicant[s]:      Jean-Paul Laprade
Title:             **Heat Transfer Label**
Atty. Doc.:       MUCC-73

Cincinnati, Ohio     45202                          April 30, 2009

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## RESPONSE TO OFFICE ACTION AND AMENDMENT

This paper is responsive to the Office Action mailed on March 18, 2009.

**Amendments to the Claims** are reflected in the Listing of Claims, which

begins on page 2 of this paper.

**Remarks** begin on page 7 of this paper.

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Response to Office Action and Amendment
Attorney Docket No. MUCC-73

## Listing of Claims

1. (Presently Amended) A heat transfer label comprising:

(a) a support portion;

(b) a transfer portion over said support portion for transfer of the transfer portion,

from the support portion to an article that has not undergone an oxidizing treatment,

upon application of heat to the support portion while the transfer portion is placed into

contact with the article, said transfer portion including <u>at least</u>

<u>an ink layer; and</u>

an adhesive layer comprising a vinyl acetate resin, a tackifying petroleum

hydrocarbon resin, and a microcrystalline wax<u>;</u>

<u>wherein said ink layer is disposed between said adhesive layer and said</u>

<u>support portion</u>.

- 2 -

MUCC000175

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Response to Office Action and Amendment
Attorney Docket No. MUCC-73

2. (Previously Amended) The heat transfer label of claim 1, wherein said vinyl acetate resin is an ethylene vinyl acetate resin further comprising 39-42% vinyl acetate resin which is soluble in organic solvents and has a bulk density of about 30 lb/ft$^3$, a ring and ball softening point of about 200°C, and a melt index of 48-66 grams per 10 minutes.

3. (Presently Amended) The heat transfer label of claim 2, wherein said vinyl acetate resin is 70% of said adhesive layer, said tackifying petroleum hydrocarbon resin is 25% of said adhesive layer, and said micrycrystalline wax is 5% of said adhesive layer.

4. (Original) The heat transfer label of claim 1, wherein said vinyl acetate resin is an ethylene vinyl acetate resin having a vinyl acetate content of between 18 and 42 percent.

5. (Original) The heat transfer label of claim 4, wherein said tackifying petroleum hydrocarbon resin has a Tg range of between 30°C and 85°C.

6. (Original) The heat transfer label of claim 1, wherein said tackifying petroleum hydrocarbon resin has a Tg range of between 30°C and 85°C.

- 3 -

MUCC000176

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Response to Office Action and Amendment
Attorney Docket No. MUCC-73

7. (Canceled)

8. (Canceled)

9. (Original) The heat transfer label of claim 1, wherein said microcrystalline wax further includes a melting point of 150-180 °F, a hardness of greater than 10 dmm at 77 °F, and is 30-60% normal paraffins.

10. (Canceled)

11. (Canceled)

12. (Original) The heat transfer label of claim 1, wherein said transfer portion further comprises a protective lacquer layer.

13. (Original) The heat transfer label of claim 12, wherein said protective lacquer layer further comprises a hard polyester or acrylic resin being a copolyester resin having a high tensile strength of 8000 psi, a low elongation of 7%, a 79 D scale Shore Durometer hardness, and a 156 °C ring and ball melt flow point.

- 4 -

MUCC000177

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Response to Office Action and Amendment
Attorney Docket No. MUCC-73

14. (Original) The heat transfer label of claim 12, wherein said transfer portion further comprises a release agent and at least one of a hard polyester resin and an acrylic resin.

15. (Original) The heat transfer label of claim 14, wherein said release agent is a surfactant or a wax.

16. (Original) The heat transfer label of claim 15, wherein said release agent is selected from the group consisting of dioctyl sodium sulfosuccinate in mineral seal oil, ethoxylated alcohol, and carnauba wax.

17. (Original) The heat transfer label of claim 16, wherein said release agent is carnauba wax.

18. (Presently Amended) The heat transfer label of claim 12, ~~further comprising an~~ wherein said ink layer is proximal to said protective lacquer layer.

19. (Original) The heat transfer label of claim 18, said ink layer comprising a resin chosen from a polyamide, a polyester, a vinyl, and an acrylic.

- 5 -

MUCC000178

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Response to Office Action and Amendment
Attorney Docket No. MUCC-73

20. (Original) The heat transfer label of claim 19, wherein said ink layer comprises a polyamide resin, and said polyamide resin is a clear alcohol soluble polyamide resin based on dimerized vegetable acid and aliphatic polyamines and having a Brookfield viscosity at 160°C of 4-7 poise, a softening point of 105-115°C and a Gardner color (maximum) of 7.

21. (Presently Amended) The heat transfer label of claim 1, further comprising a release layer interposed between said support portion and said transfer portion, the release layer chosen from a wax release layer having wax in an amount of 6 to 8 pounds per ~~ream~~ 3,000 ft$^2$ of said support portion, or a non-wax release layer including a wax skim coat in the amount of 0.25 to 1.00 pound per ream.

22. (Original) The heat transfer label of claim 1, wherein said support portion includes a sheet of paper.

23. (Original) The heat transfer label of claim 22, wherein said support portion comprises one-sided clay-coated paper.

24. (Canceled)

- 6 -

MUCC000179

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Response to Office Action and Amendment
Attorney Docket No. MUCC-73

## REMARKS

Claims 1-24 are pending in the application. Claims 1-24 are presently rejected by the Examiner. Claims 1, 3, 18, and 21 are presently amended. Claims 7, 8, 10, 11, and 24 are presently canceled. In view of the amendments and the discussion below, it is submitted that the application is now in condition for allowance.

### Claim Rejections 35 U.S.C. § 112, First Paragraph

The Examiner has rejected claims 3, 7, 8, 10, 11, 21, and 24 under 35 U.S.C. § 112, first paragraph, as failing to comply with the written description requirement. The Examiner states that the claims contain subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the art that the inventor, at the time the application was filed, had possession of the claimed invention.

As an initial matter, Applicant notes that each of claims 7, 8, 10, 11 and 24 have been presently canceled from the application, thereby rendering their rejection under 35 U.S.C. § 112, first paragraph, moot.

Regarding the remaining rejected claims: First, the Examiner has asserted that the claimed proportions of the vinyl acetate resin, the tackifying petroleum hydrocarbon resin, and the microcrystalline wax, respectively, were not properly supported by the teachings of the present specification. In response, Applicant has presently amended claim 3 to incorporate the limitations originally found in claims 7, 8,

- 7 -

MUCC000180

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Response to Office Action and Amendment
Attorney Docket No. MUCC-73

10, and 11. Applicant submits that the various proportions now recited in claim 3 are supported by the description at least at page 15 of the present application. In view of the present amendments, Applicant respectfully requests withdrawal of the rejection of claim 3 under 35 U.S.C. § 112, first paragraph.

Next, the Examiner objects to claim 21 as reciting "6 to 8 pounds [of wax] per ream," whereas page 3, line 13 of the specification recites, "6 to 8 pounds of wax per 3000 ft$^2$ of paper carrier web." The "paper carrier web" is an example of the "support portion" that is recited in claim 1 (from which rejected claim 21 depends). Thus, in response, Applicant has presently amended claim 21 to replace "per ream" with "per 3,000 ft$^2$ of the support portion." Applicant thus submits that presently amended claim 21 is supported by the description, and respectfully requests a withdrawal of the rejection of claim 21 under 35 U.S.C. § 112, first paragraph.

## Claim Rejections 35 U.S.C. § 102

The Examiner has rejected claims 1, 4-6, 9, 12, 18, 19, and 22 under 35 U.S.C. § 102(b) as being anticipated by U.S. Patent No. 4,557,964 (Magnotta). In particular, the Examiner states that Magnotta teaches a heat transfer label that comprises a support, which can be a sheet of paper, and an adhesive composition that is included in a layer (being a "release coating") that comprises a vinyl acetate resin, a tackifying petroleum hydrocarbon resin, and a microcrystalline wax (citing the abstract, column 3, lines 62 through column 4, line 6; and column 4, line 45 through column 5,

- 8 -

MUCC000181

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Response to Office Action and Amendment
Attorney Docket No. MUCC-73

line 29). Applicant respectfully disagrees with the rejection of claims under 35 U.S.C.

§ 102(b) as anticipated by Magnotta.

As an initial matter, Applicant notes that of claims 1, 4-6, 9, 12, 18, 19, and

22 (rejected by the Examiner), only claim 1 is independent (and each of claims 4-6, 9,

12, 18, 19, and 22 ultimately depends from independent claim 1). Presently amended

independent claim 1 is directed to a heat transfer label that (1) includes a support

portion and a transfer portion, (2) wherein the transfer portion includes at least an ink

layer and an adhesive layer having a vinyl acetate resin, a tackifying petroleum

hydrocarbon resin, and a microcrystalline wax, and (3) "wherein said ink layer is

disposed between said adhesive layer and said support portion." Thus, the presently

claimed structure includes an ink layer that is disposed between a support portion (e.g.,

a carrier sheet) and the layer having a vinyl acetate resin, a tackifying petroleum

hydrocarbon resin, and a microcrystalline wax (i.e., the adhesive layer). Support for the

present amendments to independent claim 1 may be found at least at Figs. 1 and 2 and

throughout the description of the present application, and at least at page 7, line 11

through page 10, line 10 thereof.

Magnotta does not disclose a heat transfer label that (1) includes a

support portion and a transfer portion, (2) wherein the transfer portion includes at least

an ink layer and an adhesive layer having a vinyl acetate resin, a tackifying petroleum

hydrocarbon resin, and a microcrystalline wax, and (3) "wherein said ink layer is

- 9 -

MUCC000182

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Response to Office Action and Amendment
Attorney Docket No. MUCC-73

disposed between said adhesive layer and said support portion," as is recited in

independent claim 1.[1] Magnotta is directed to a heat transferable laminate, and

particularly to an improved release layer therefor. The release layer is described as

containing a crystalline wax and a tackifying agent. This release layer is what the

Examiner points to as anticipating the adhesive layer recited in the claims. Magnotta

particularly describes a carrier web (e.g., a paper or a plastic sheet), with the heat

transferable laminate (including any ink layer) disposed thereon, and to be released

therefrom. The release layer pointed to by the Examiner lies directly adjacent the

carrier web, with layers of the heat transferable laminate disposed on the side of the

release layer that is opposite the carrier web. In other words, in Magnotta, the layer

including a crystalline wax and a tackifying agent (i.e., the release layer that the

Examiner suggests is an adhesive layer) lies between the support portion (i.e., carrier

web) and the ink layer, whereas independent claim 1 recites that the ink layer lies

between the support portion and the layer including vinyl acetate resin, tackifying

petroleum hydrocarbon resin, and microcrystalline wax (i.e., the adhesive layer). Thus,

Magnotta does not disclose the structure recited in independent claim 1.

---

[1] As an initial matter, Applicant does not agree that Magnotta discloses an adhesive layer having a vinyl acetate resin, a tackifying petroleum hydrocarbon resin, and a microcrystalline wax, because Magnotta is explicit that its layer is a release layer and not an adhesive layer (as described by Applicant in its Response dated December 3, 2008). However, in view of the present amendments, Applicant also argues against Magnotta based on the structure of the heat transfer label recited in the claims.

- 10 -

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Response to Office Action and Amendment
Attorney Docket No. MUCC-73

      In view of the above, Applicant submits that Magnotta does not anticipate independent claim 1 of the present application. Further, as independent claim 1 is not anticipated, Applicant further submits that claims 4-6, 9, 12, 18, 19, and 22 (each of which depend ultimately from claim 1) are also not anticipated by Magnotta. Thus, Applicant respectfully requests a withdrawal of the rejection of claims 1, 4-6, 9, 12, 18, 19, and 22 under 35 U.S.C. § 102(b) as anticipated by Magnotta.

      Further, Applicant submits that one skilled in the art would not modify the laminate of Magnotta such that the ink layer would lie between the support portion and the release layer of Magnotta, because to do so would render the laminate of Magnotta inoperable. This is because the composition pointed to by the Examiner is not an "adhesive layer," as is recited in independent claim 1. It is a <u>release layer,</u> as is <u>explicitly</u> noted by Magnotta. As the layer of Magnotta is a <u>release layer</u>, it is important that the layer of Magnotta <u>not have any adhesive qualities</u>. <u>The entire purpose</u> of the layer in Magnotta is to allow the laminate to <u>release from</u> the carrier web. And once the laminate releases from the carrier web, it then adheres to another surface, such as the side surface of an article. All of this is clear from Magnotta's repeated references to (1) its release layer being coated on a carrier web with an ink design layer coated over the release layer, and (2) the release layer allowing transfer of the ink design layer from the carrier web to a plastic or glass container.

- 11 -

MUCC000184

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Response to Office Action and Amendment
Attorney Docket No. MUCC-73

If Magnotta were modified such that the ink layer of the laminate lay between the support portion and the release layer (i.e., carrier web → ink layer → release layer), then one of two results would obtain.  Either (1) any adhesive in the ink formulation (or associated with the ink) would adhere the ink design layer to the carrier web and prevent its separation therefrom (due to the now <u>lack</u> of a release layer between the carrier web and ink design layer), or (2) if any transfer to a container occurred, now the release layer would lie between the ink design layer and container surface, causing the ink design layer to be easily removed from the container (rather than remaining on the container as it is supposed to).  In either case, modifying Magnotta to have the presently claimed structure would result in a laminate that does not remain adhered to the side surface of an article, and thereby does not provide an ink design layer on the side of the article, and is therefore inoperable.  In other words, one skilled in the art would not make a modification to Magnotta that would destroy its use as a laminate to label a container.

<u>Claim Rejections 35 U.S.C. § 103</u>

The Examiner has rejected claim 2 under 35 U.S.C. § 103(a) as being unpatentable over Magnotta in view of U.S. Patent No. 5,685,758 (Paul).  Applicant respectfully disagrees.

In order to establish a prima facie case of obviousness, the Examiner must show that the cited references, as combined, teach or suggest each of the

- 12 -

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Response to Office Action and Amendment
Attorney Docket No. MUCC-73

elements of the claims. Claim 2 ultimately depends from independent claim 1, and thus

incorporates the limitations of independent claim 1. At least for the reasons discussed

above, Magnotta does not teach or suggest each and every element of independent

claim 1. Further, Applicant submits that Paul fails to teach the elements of independent

claim 1 that are missing from Paul. More specifically, Applicant submits that, like

Magnotta, Paul does not teach or suggest a laminate including a structure as described

and claimed in the present application [i.e., (1) including a support portion and a transfer

portion, (2) wherein the transfer portion includes at least an ink layer and an adhesive

layer having a vinyl acetate resin, a tackifying petroleum hydrocarbon resin, and a

microcrystalline wax, and (3) "wherein said ink layer is disposed between said adhesive

layer and said support portion"]. Thus, it is submitted that any combination of Magnotta

and Paul does not show each and every limitation of claim 2, as that claim is ultimately

dependent from independent claim 1. Accordingly, Applicant respectfully requests a

withdrawal of the Examiner's rejection of claim 2 under 35 U.S.C. § 103(a) as

unpatentable over Magnotta in view of Paul.

The Examiner has further rejected claims 12-22 under 35 U.S.C. § 103(a)

as being unpatentable over Magnotta in view of U.S. Patent No. 5,908,694 (Makar).

Applicant respectfully disagrees.

In order to establish a prima facie case of obviousness, the Examiner

must show that the cited references, as combined, teach or suggest each of the

- 13 -

MUCC000186

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Response to Office Action and Amendment
Attorney Docket No. MUCC-73

elements of the claims. Claims 12-22 ultimately depend from independent claim 1, and thus incorporates the limitations of independent claim 1. At least for the reasons discussed above, Magnotta does not teach or suggest each and every element of independent claim 1. Further, Applicant submits that Makar fails to teach the elements of independent claim 1 that are missing from Makar. More specifically, Applicant submits that, like Magnotta, Makar does not teach or suggest a laminate including a structure as described and claimed in the present application [i.e., (1) including a support portion and a transfer portion, (2) wherein the transfer portion includes at least an ink layer and an adhesive layer having a vinyl acetate resin, a tackifying petroleum hydrocarbon resin, and a microcrystalline wax, and (3) "wherein said ink layer is disposed between said adhesive layer and said support portion"]. Thus, it is submitted that any combination of Magnotta and Makar does not show each and every limitation of claims 12-22, as those claim is ultimately dependent from independent claim 1. Accordingly, Applicant respectfully requests a withdrawal of the Examiner's rejection of claims 12-22 under 35 U.S.C. § 103(a) as unpatentable over Magnotta in view of Makar.

Finally, the Examiner has rejected claims 22 and 23 under 35 U.S.C. § 103(a) as being unpatentable over Magnotta in view of U.S. Patent No. 4,935,300 (Parker). Applicants respectfully disagree.

In order to establish a prima facie case of obviousness, the Examiner must show that the cited references, as combined, teach or suggest each of the

- 14 -

MUCC000187

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Response to Office Action and Amendment
Attorney Docket No. MUCC-73

elements of the claims. Claims 22 and 23 ultimately depend from independent claim 1, and thus incorporates the limitations of independent claim 1. At least for the reasons discussed above, Magnotta does not teach or suggest each and every element of independent claim 1. Further, Applicant submits that Parker fails to teach the elements of independent claim 1 that are missing from Parker. More specifically, Applicant submits that, like Magnotta, Parker does not teach or suggest a laminate including a structure as described and claimed in the present application [i.e., (1) including a support portion and a transfer portion, (2) wherein the transfer portion includes at least an ink layer and an adhesive layer having a vinyl acetate resin, a tackifying petroleum hydrocarbon resin, and a microcrystalline wax, and (3) "wherein said ink layer is disposed between said adhesive layer and said support portion"]. Thus, it is submitted that any combination of Magnotta and Parker does not show each and every limitation of claim 3, as that claim is ultimately dependent from independent claim 1. Accordingly, Applicant respectfully requests a withdrawal of the Examiner's rejection of claims 22 and 23 under 35 U.S.C. § 103(a) as unpatentable over Magnotta in view of Parker.

## Conclusion

For the foregoing reasons, it is submitted that all claims are patentable, and a Notice of Allowance is respectfully requested.

No fee is believed due. Any deficiencies or credits necessary to complete this communication should be applied to Deposit Account No. 23-3000.

- 15 -

MUCC000188

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Response to Office Action and Amendment
Attorney Docket No. MUCC-73

      The Examiner is invited to contact the undersigned attorney with any

questions or remaining issues.

                    Respectfully submitted,
                    WOOD, HERRON & EVANS, L.L.P.

                    By:/David E. Jefferies/
                       David E. Jefferies, Reg. No. 46,800

- 16 -

MUCC000189

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 5250682 |
| **Application Number:** | 11380762 |
| **International Application Number:** | |
| **Confirmation Number:** | 3139 |
| **Title of Invention:** | HEAT TRANSFER LABEL |
| **First Named Inventor/Applicant Name:** | Jean-Paul Laprade |
| **Customer Number:** | 26875 |
| **Filer:** | David Eric Jefferies/Ginger Graff Grammer |
| **Filer Authorized By:** | David Eric Jefferies |
| **Attorney Docket Number:** | MUCC-73 |
| **Receipt Date:** | 30-APR-2009 |
| **Filing Date:** | 28-APR-2006 |
| **Time Stamp:** | 14:17:28 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Amendment After Final | MUCC-73_Response_Amendment.pdf | 78202<br>7d3d9f3d569fba44930046ce4dab10841ac5251aa | no | 16 |

**Warnings:**

**Information:**

MUCC000190

| Total Files Size (in bytes): | 78202 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

MUCC000191

# EXHIBIT B3

**CERTIFICATE OF ELECTRONIC TRANSMISSION**

I hereby certify that this correspondence is being
electronically transmitted via EFS-WEB on June 17,
2009.

| /David E. Jefferies/ | June 17, 2009 |
|---|---|
| David E. Jefferies | Date |
| Reg. No, 46,800 | |

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Serial No.: | 11/380,762 |
| Filed: | April 28, 2006 |
| Examiner: | David J. Joy |
| Confirmation No.: | 3139 |
| Art Unit: | 1794 |
| Applicant[s]: | Jean-Paul Laprade |
| Title: | **Heat Transfer Label** |
| Atty. Doc.: | MUCC-73 |

Cincinnati, Ohio    45202                                   June 17, 2009

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## SUBMISSION FOR REQUEST FOR CONTINUED EXAMINATION

In response to the final Office Action dated April 30, 2009 in the above-

identified application, Applicant responds as follows:

**Amendments to the Claims** are reflected in the Listing of Claims, which

begins on page 2 of this paper.

**Remarks** begin on page 7 of this paper.

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Request for Continued Examination
Attorney Docket No. MUCC-73

## Listing of Claims

1. (Presently Amended) A heat transfer label comprising:

(a) a support portion;

(b) a transfer portion over said support portion for transfer of the transfer portion,

from the support portion to an article that has not undergone an oxidizing treatment,

upon application of heat to the support portion while the transfer portion is placed into

contact with the article, said transfer portion including at least

an ink layer; and

an adhesive layer comprising a vinyl acetate resin, a tackifying petroleum

hydrocarbon resin, and a microcrystalline wax;

wherein said ink layer is disposed between said adhesive layer and said

support portion.

- 2 -

MUCC000202

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Request for Continued Examination
Attorney Docket No. MUCC-73

2. (Previously Amended) The heat transfer label of claim 1, wherein said vinyl acetate resin is an ethylene vinyl acetate resin further comprising 39-42% vinyl acetate resin which is soluble in organic solvents and has a bulk density of about 30 lb/ft$^3$, a ring and ball softening point of about 200°C, and a melt index of 48-66 grams per 10 minutes.

3. (Presently Amended) The heat transfer label of claim 2, wherein said vinyl acetate resin is 70% of said adhesive layer, said tackifying petroleum hydrocarbon resin is 25% of said adhesive layer, and said micrycrystalline wax is 5% of said adhesive layer.

4. (Original) The heat transfer label of claim 1, wherein said vinyl acetate resin is an ethylene vinyl acetate resin having a vinyl acetate content of between 18 and 42 percent.

5. (Original) The heat transfer label of claim 4, wherein said tackifying petroleum hydrocarbon resin has a Tg range of between 30°C and 85°C.

6. (Original) The heat transfer label of claim 1, wherein said tackifying petroleum hydrocarbon resin has a Tg range of between 30°C and 85°C.

- 3 -

MUCC000203

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Request for Continued Examination
Attorney Docket No. MUCC-73

7. (Canceled)

8. (Canceled)

9. (Original) The heat transfer label of claim 1, wherein said microcrystalline wax further includes a melting point of 150-180°F, a hardness of greater than 10 dmm at 77°F, and is 30-60% normal paraffins.

10. (Canceled)

11. (Canceled)

12. (Original) The heat transfer label of claim 1, wherein said transfer portion further comprises a protective lacquer layer.

13. (Original) The heat transfer label of claim 12, wherein said protective lacquer layer further comprises a hard polyester or acrylic resin being a copolyester resin having a high tensile strength of 8000 psi, a low elongation of 7%, a 79 D scale Shore Durometer hardness, and a 156°C ring and ball melt flow point.

- 4 -

MUCC000204

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Request for Continued Examination
Attorney Docket No. MUCC-73

14. (Original) The heat transfer label of claim 12, wherein said transfer portion further comprises a release agent and at least one of a hard polyester resin and an acrylic resin.

15. (Original) The heat transfer label of claim 14, wherein said release agent is a surfactant or a wax.

16. (Original) The heat transfer label of claim 15, wherein said release agent is selected from the group consisting of dioctyl sodium sulfosuccinate in mineral seal oil, ethoxylated alcohol, and carnauba wax.

17. (Original) The heat transfer label of claim 16, wherein said release agent is carnauba wax.

18. (Presently Amended) The heat transfer label of claim 12, ~~further comprising an~~ wherein said ink layer is proximal to said protective lacquer layer.

19. (Original) The heat transfer label of claim 18, said ink layer comprising a resin chosen from a polyamide, a polyester, a vinyl, and an acrylic.

- 5 -

MUCC000205

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Request for Continued Examination
Attorney Docket No. MUCC-73

20. (Original) The heat transfer label of claim 19, wherein said ink layer comprises a

polyamide resin, and said polyamide resin is a clear alcohol soluble polyamide resin

based on dimerized vegetable acid and aliphatic polyamines and having a Brookfield

viscosity at 160°C of 4-7 poise, a softening point of 105-115°C and a Gardner color

(maximum) of 7.

21. (Presently Amended) The heat transfer label of claim 1, further comprising a release

layer interposed between said support portion and said transfer portion, the release

layer chosen from a wax release layer having wax in an amount of 6 to 8 pounds per

~~ream~~ 3,000 ft$^2$ of said support portion, or a non-wax release layer including a wax skim

coat in the amount of 0.25 to 1.00 pound per ream.

22. (Original) The heat transfer label of claim 1, wherein said support portion includes a

sheet of paper.

23. (Original) The heat transfer label of claim 22, wherein said support portion

comprises one-sided clay-coated paper.

24. (Canceled)

- 6 -

MUCC000206

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Request for Continued Examination
Attorney Docket No. MUCC-73

## REMARKS

Claims 1-24 are pending in the application. Claims 1-24 are presently rejected by the Examiner. Claims 1, 3, 18, and 21 are presently amended. Claims 7, 8, 10, 11, and 24 are presently canceled. In view of the amendments and the discussion below, it is submitted that the application is now in condition for allowance.

### Claim Rejections 35 U.S.C. § 112, First Paragraph

The Examiner has rejected claims 3, 7, 8, 10, 11, 21, and 24 under 35 U.S.C. § 112, first paragraph, as failing to comply with the written description requirement. The Examiner states that the claims contain subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the art that the inventor, at the time the application was filed, had possession of the claimed invention.

As an initial matter, Applicant notes that each of claims 7, 8, 10, 11 and 24 have been presently canceled from the application, thereby rendering their rejection under 35 U.S.C. § 112, first paragraph, moot.

Regarding the remaining rejected claims: First, the Examiner has asserted that the claimed proportions of the vinyl acetate resin, the tackifying petroleum hydrocarbon resin, and the microcrystalline wax, respectively, were not properly supported by the teachings of the present specification. In response, Applicant has presently amended claim 3 to incorporate the limitations originally found in claims 7, 8,

- 7 -

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Request for Continued Examination
Attorney Docket No. MUCC-73

10, and 11. Applicant submits that the various proportions now recited in claim 3 are supported by the description at least at page 15 of the present application. In view of the present amendments, Applicant respectfully requests withdrawal of the rejection of claim 3 under 35 U.S.C. § 112, first paragraph.

Next, the Examiner objects to claim 21 as reciting "6 to 8 pounds [of wax] per ream," whereas page 3, line 13 of the specification recites, "6 to 8 pounds of wax per 3000 $ft^2$ of paper carrier web." The "paper carrier web" is an example of the "support portion" that is recited in claim 1 (from which rejected claim 21 depends). Thus, in response, Applicant has presently amended claim 21 to replace "per ream" with "per 3,000 $ft^2$ of the support portion." Applicant thus submits that presently amended claim 21 is supported by the description, and respectfully requests a withdrawal of the rejection of claim 21 under 35 U.S.C. § 112, first paragraph.

### Claim Rejections 35 U.S.C. § 102

The Examiner has rejected claims 1, 4-6, 9, 12, 18, 19, and 22 under 35 U.S.C. § 102(b) as being anticipated by U.S. Patent No. 4,557,964 (Magnotta). In particular, the Examiner states that Magnotta teaches a heat transfer label that comprises a support, which can be a sheet of paper, and an adhesive composition that is included in a layer (being a "release coating") that comprises a vinyl acetate resin, a tackifying petroleum hydrocarbon resin, and a microcrystalline wax (citing the abstract, column 3, lines 62 through column 4, line 6; and column 4, line 45 through column 5,

- 8 -

MUCC000208

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Request for Continued Examination
Attorney Docket No. MUCC-73

line 29). Applicant respectfully disagrees with the rejection of claims under 35 U.S.C. § 102(b) as anticipated by Magnotta.

As an initial matter, Applicant notes that of claims 1, 4-6, 9, 12, 18, 19, and 22 (rejected by the Examiner), only claim 1 is independent (and each of claims 4-6, 9, 12, 18, 19, and 22 ultimately depends from independent claim 1). Presently amended independent claim 1 is directed to a heat transfer label that (1) includes a support portion and a transfer portion, (2) wherein the transfer portion includes at least an ink layer and an adhesive layer having a vinyl acetate resin, a tackifying petroleum hydrocarbon resin, and a microcrystalline wax, and (3) "wherein said ink layer is disposed between said adhesive layer and said support portion." Thus, the presently claimed structure includes an ink layer that is disposed between a support portion (e.g., a carrier sheet) and the layer having a vinyl acetate resin, a tackifying petroleum hydrocarbon resin, and a microcrystalline wax (i.e., the adhesive layer). Support for the present amendments to independent claim 1 may be found at least at Figs. 1 and 2 and throughout the description of the present application, and at least at page 7, line 11 through page 10, line 10 thereof.

Magnotta does not disclose a heat transfer label that (1) includes a support portion and a transfer portion, (2) wherein the transfer portion includes at least an ink layer and an adhesive layer having a vinyl acetate resin, a tackifying petroleum hydrocarbon resin, and a microcrystalline wax, and (3) "wherein said ink layer is

- 9 -

MUCC000209

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Request for Continued Examination
Attorney Docket No. MUCC-73

disposed between said adhesive layer and said support portion," as is recited in independent claim 1.[1] Magnotta is directed to a heat transferable laminate, and particularly to an improved release layer therefor. The release layer is described as containing a crystalline wax and a tackifying agent. This release layer is what the Examiner points to as anticipating the adhesive layer recited in the claims. Magnotta particularly describes a carrier web (e.g., a paper or a plastic sheet), with the heat transferable laminate (including any ink layer) disposed thereon, and to be released therefrom. The release layer pointed to by the Examiner lies directly adjacent the carrier web, with layers of the heat transferable laminate disposed on the side of the release layer that is opposite the carrier web. In other words, in Magnotta, the layer including a crystalline wax and a tackifying agent (i.e., the release layer that the Examiner suggests is an adhesive layer) lies between the support portion (i.e., carrier web) and the ink layer, whereas independent claim 1 recites that the ink layer lies between the support portion and the layer including vinyl acetate resin, tackifying petroleum hydrocarbon resin, and microcrystalline wax (i.e., the adhesive layer). Thus, Magnotta does not disclose the structure recited in independent claim 1.

---

[1] As an initial matter, Applicant does not agree that Magnotta discloses an adhesive layer having a vinyl acetate resin, a tackifying petroleum hydrocarbon resin, and a microcrystalline wax, because Magnotta is explicit that its layer is a release layer and not an adhesive layer (as described by Applicant in its Response dated December 3, 2008). However, in view of the present amendments, Applicant also argues against Magnotta based on the structure of the heat transfer label recited in the claims.

- 10 -

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Request for Continued Examination
Attorney Docket No. MUCC-73

In view of the above, Applicant submits that Magnotta does not anticipate independent claim 1 of the present application. Further, as independent claim 1 is not anticipated, Applicant further submits that claims 4-6, 9, 12, 18, 19, and 22 (each of which depend ultimately from claim 1) are also not anticipated by Magnotta. Thus, Applicant respectfully requests a withdrawal of the rejection of claims 1, 4-6, 9, 12, 18, 19, and 22 under 35 U.S.C. § 102(b) as anticipated by Magnotta.

Further, Applicant submits that one skilled in the art would not modify the laminate of Magnotta such that the ink layer would lie between the support portion and the release layer of Magnotta, because to do so would render the laminate of Magnotta inoperable. This is because the composition pointed to by the Examiner is not an "adhesive layer," as is recited in independent claim 1. It is a release layer, as is explicitly noted by Magnotta. As the layer of Magnotta is a release layer, it is important that the layer of Magnotta not have any adhesive qualities. The entire purpose of the layer in Magnotta is to allow the laminate to release from the carrier web. And once the laminate releases from the carrier web, it then adheres to another surface, such as the side surface of an article. All of this is clear from Magnotta's repeated references to (1) its release layer being coated on a carrier web with an ink design layer coated over the release layer, and (2) the release layer allowing transfer of the ink design layer from the carrier web to a plastic or glass container.

- 11 -

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Request for Continued Examination
Attorney Docket No. MUCC-73

If Magnotta were modified such that the ink layer of the laminate lay
between the support portion and the release layer (i.e., carrier web → ink layer →
release layer), then one of two results would obtain. Either (1) any adhesive in the ink
formulation (or associated with the ink) would adhere the ink design layer to the carrier
web and prevent its separation therefrom (due to the now lack of a release layer
between the carrier web and ink design layer), or (2) if any transfer to a container
occurred, now the release layer would lie between the ink design layer and container
surface, causing the ink design layer to be easily removed from the container (rather
than remaining on the container as it is supposed to). In either case, modifying
Magnotta to have the presently claimed structure would result in a laminate that does
not remain adhered to the side surface of an article, and thereby does not provide an
ink design layer on the side of the article, and is therefore inoperable. In other words,
one skilled in the art would not make a modification to Magnotta that would destroy its
use as a laminate to label a container.

**Claim Rejections 35 U.S.C. § 103**

The Examiner has rejected claim 2 under 35 U.S.C. § 103(a) as being
unpatentable over Magnotta in view of U.S. Patent No. 5,685,758 (Paul). Applicant
respectfully disagrees.

In order to establish a prima facie case of obviousness, the Examiner
must show that the cited references, as combined, teach or suggest each of the

- 12 -

MUCC000212

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Request for Continued Examination
Attorney Docket No. MUCC-73

elements of the claims. Claim 2 ultimately depends from independent claim 1, and thus
incorporates the limitations of independent claim 1. At least for the reasons discussed
above, Magnotta does not teach or suggest each and every element of independent
claim 1. Further, Applicant submits that Paul fails to teach the elements of independent
claim 1 that are missing from Paul. More specifically, Applicant submits that, like
Magnotta, Paul does not teach or suggest a laminate including a structure as described
and claimed in the present application [i.e., (1) including a support portion and a transfer
portion, (2) wherein the transfer portion includes at least an ink layer and an adhesive
layer having a vinyl acetate resin, a tackifying petroleum hydrocarbon resin, and a
microcrystalline wax, and (3) "wherein said ink layer is disposed between said adhesive
layer and said support portion"]. Thus, it is submitted that any combination of Magnotta
and Paul does not show each and every limitation of claim 2, as that claim is ultimately
dependent from independent claim 1. Accordingly, Applicant respectfully requests a
withdrawal of the Examiner's rejection of claim 2 under 35 U.S.C. § 103(a) as
unpatentable over Magnotta in view of Paul.

The Examiner has further rejected claims 12-22 under 35 U.S.C. § 103(a)
as being unpatentable over Magnotta in view of U.S. Patent No. 5,908,694 (Makar).
Applicant respectfully disagrees.

In order to establish a prima facie case of obviousness, the Examiner
must show that the cited references, as combined, teach or suggest each of the

- 13 -

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Request for Continued Examination
Attorney Docket No. MUCC-73

elements of the claims. Claims 12-22 ultimately depend from independent claim 1, and

thus incorporates the limitations of independent claim 1. At least for the reasons

discussed above, Magnotta does not teach or suggest each and every element of

independent claim 1. Further, Applicant submits that Makar fails to teach the elements

of independent claim 1 that are missing from Makar. More specifically, Applicant

submits that, like Magnotta, Makar does not teach or suggest a laminate including a

structure as described and claimed in the present application [i.e., (1) including a

support portion and a transfer portion, (2) wherein the transfer portion includes at least

an ink layer and an adhesive layer having a vinyl acetate resin, a tackifying petroleum

hydrocarbon resin, and a microcrystalline wax, and (3) "wherein said ink layer is

disposed between said adhesive layer and said support portion"]. Thus, it is submitted

that any combination of Magnotta and Makar does not show each and every limitation of

claims 12-22, as those claim is ultimately dependent from independent claim 1.

Accordingly, Applicant respectfully requests a withdrawal of the Examiner's rejection of

claims 12-22 under 35 U.S.C. § 103(a) as unpatentable over Magnotta in view of Makar.

Finally, the Examiner has rejected claims 22 and 23 under 35 U.S.C.

§ 103(a) as being unpatentable over Magnotta in view of U.S. Patent No. 4,935,300

(Parker). Applicants respectfully disagree.

In order to establish a prima facie case of obviousness, the Examiner

must show that the cited references, as combined, teach or suggest each of the

- 14 -

MUCC000214

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Request for Continued Examination
Attorney Docket No. MUCC-73

elements of the claims. Claims 22 and 23 ultimately depend from independent claim 1,

and thus incorporates the limitations of independent claim 1. At least for the reasons

discussed above, Magnotta does not teach or suggest each and every element of

independent claim 1. Further, Applicant submits that Parker fails to teach the elements

of independent claim 1 that are missing from Parker. More specifically, Applicant

submits that, like Magnotta, Parker does not teach or suggest a laminate including a

structure as described and claimed in the present application [i.e., (1) including a

support portion and a transfer portion, (2) wherein the transfer portion includes at least

an ink layer and an adhesive layer having a vinyl acetate resin, a tackifying petroleum

hydrocarbon resin, and a microcrystalline wax, and (3) "wherein said ink layer is

disposed between said adhesive layer and said support portion"]. Thus, it is submitted

that any combination of Magnotta and Parker does not show each and every limitation

of claim 3, as that claim is ultimately dependent from independent claim 1. Accordingly,

Applicant respectfully requests a withdrawal of the Examiner's rejection of claims 22 and

23 under 35 U.S.C. § 103(a) as unpatentable over Magnotta in view of Parker.

## Conclusion

For the foregoing reasons, it is submitted that all claims are patentable,

and a Notice of Allowance is respectfully requested.

- 15 -

MUCC000215

Application No. 11/380,762
Filed April 28, 2006
Applicant Jean-Paul Laprade
Request for Continued Examination
Attorney Docket No. MUCC-73

The fee for a Request for Continued Examination is being submitted on

even date herewith. Any deficiencies or credits necessary to complete this

communication should be applied to Deposit Account No. 23-3000.

The Examiner is invited to contact the undersigned attorney with any

questions or remaining issues.

Respectfully submitted,
WOOD, HERRON & EVANS, L.L.P.

By:/David E. Jefferies/
    David E. Jefferies, Reg. No. 46,800

- 16 -

MUCC000216

 

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 11380762 |
| **Filing Date:** | 28-Apr-2006 |
| **Title of Invention:** | HEAT TRANSFER LABEL |
| **First Named Inventor/Applicant Name:** | Jean-Paul Laprade |
| **Filer:** | David Eric Jefferies/Ginger Graff Grammer |
| **Attorney Docket Number:** | MUCC-73 |

Filed as Large Entity

## Utility under 35 USC 111(a) Filing Fees

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| Request for continued examination | 1801 | 1 | 810 | 810 |
| **Total in USD ($)** | | | | **810** |

MUCC000218

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 5533429 |
| **Application Number:** | 11380762 |
| **International Application Number:** | |
| **Confirmation Number:** | 3139 |
| **Title of Invention:** | HEAT TRANSFER LABEL |
| **First Named Inventor/Applicant Name:** | Jean-Paul Laprade |
| **Customer Number:** | 26875 |
| **Filer:** | David Eric Jefferies/Ginger Graff Grammer |
| **Filer Authorized By:** | David Eric Jefferies |
| **Attorney Docket Number:** | MUCC-73 |
| **Receipt Date:** | 17-JUN-2009 |
| **Filing Date:** | 28-APR-2006 |
| **Time Stamp:** | 14:42:26 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $810 |
| RAM confirmation Number | 846 |
| Deposit Account | 233000 |
| Authorized User | JEFFERIES,DAVID E |

The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows:

Charge any Additional Fees required under 37 C.F.R. Section 1.16 (National application filing, search, and examination fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees)

MUCC000219

**File Listing:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Request for Continued Examination (RCE) | MUCC-73_RCE_sb0030e_fill.pdf | 697247<br>7d190973dcf02b523bb1411a3cs33dbddfb5a5a | no | 3 |
| Warnings: | | | | | |
| Information: | | | | | |
| 2 | Amendment Submitted/Entered with Filing of CPA/RCE | MUCC-73_RCE.pdf | 78466<br>45d2403294f21e8bcaf370fcf5e1b2a142e4b9d | no | 16 |
| Warnings: | | | | | |
| Information: | | | | | |
| 3 | Fee Worksheet (PTO-875) | fee-info.pdf | 30202<br>e10612d72fe065e5ca10fda1f23515dddc9271 | no | 2 |
| Warnings: | | | | | |
| Information: | | | | | |
| | | **Total Files Size (in bytes):** | 805915 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

MUCC000220

# EXHIBIT B4



U{NITED} S{TATES} P{ATENT AND} T{RADEMARK} O{FFICE}

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| 26875 | 7590 | 09/21/2009 |
|---|---|---|

WOOD, HERRON & EVANS, LLP
2700 CAREW TOWER
441 VINE STREET
CINCINNATI, OH 45202

| EXAMINER |
|---|
| JOY, DAVID J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1794 | |

DATE MAILED: 09/21/2009

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/380,762 | 04/28/2006 | Jean-Paul Laprade | MUCC-73 | 3139 |

TITLE OF INVENTION: HEAT TRANSFER LABEL

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1510 | $300 | $0 | $1810 | 12/21/2009 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

## HOW TO REPLY TO THIS NOTICE:

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status above is to be removed, check box 5b on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check box 5a on Part B - Fee(s) Transmittal and pay the PUBLICATION FEE (if required) and 1/2 the ISSUE FEE shown above.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 08/07) Approved for use through 08/31/2010.

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), to: **Mail**     Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
or **Fax**     (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

26875     7590     09/21/2009

WOOD, HERRON & EVANS, LLP
2700 CAREW TOWER
441 VINE STREET
CINCINNATI, OH 45202

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)
_____ (Signature)
_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/380,762 | 04/28/2006 | Jean-Paul Laprade | MUCC-73 | 3139 |

TITLE OF INVENTION: HEAT TRANSFER LABEL

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | NO | $1510 | $300 | $0 | $1810 | 12/21/2009 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| JOY, DAVID J | 1794 | 428-032790 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).
☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
(1) the names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and State OR COUNTRY)


Please check the appropriate assignee category or categories (will not be printed on the patent): ☐ Individual  ☐ Corporation or other private group entity  ☐ Government

4a. The following fee(s) are submitted:
☐ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (**Please first reapply any previously paid issue fee shown above**)
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. Change in Entity Status (from status indicated above)
☐ a. Applicant claims SMALL ENTITY status. See 37 CFR 1.27.

☐ b. Applicant is no longer claiming SMALL ENTITY status. See 37 CFR 1.27(g)(2).

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

Authorized Signature _____          Date _____

Typed or printed name _____          Registration No. _____

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450.
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

PTOL-85 (Rev. 08/07) Approved for use through 08/31/2010.          OMB 0651-0033          U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 11/380,762 | 04/28/2006 | Jean-Paul Laprade | MUCC-73 | 3139 |

26875    7590    09/21/2009

WOOD, HERRON & EVANS, LLP
2700 CAREW TOWER
441 VINE STREET
CINCINNATI, OH 45202

| EXAMINER | |
|---|---|
| JOY, DAVID J | |
| ART UNIT | PAPER NUMBER |
| 1794 | |

DATE MAILED: 09/21/2009

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment to date is 433 day(s). If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the Patent Term Adjustment will be 433 day(s).

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

Page 3 of 3

PTOL-85 (Rev. 08/07) Approved for use through 08/31/2010.

MUCC000224

| *Notice of Allowability* | Application No. | Applicant(s) |
| --- | --- | --- |
| | 11/380,762 | LAPRADE, JEAN-PAUL |
| | Examiner | Art Unit |
| | David J. Joy | 1794 |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *the RCE and amendment filed on 17 June 2009, and the phone interview on 31 August 2009*.

2. ☒ The allowed claim(s) is/are *1-6,9 and 12-23*.

3. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All   b) ☐ Some*   c) ☐ None  of the:

      1. ☐ Certified copies of the priority documents have been received.

      2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

      3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

4. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached

      1) ☐ hereto or 2) ☐ to Paper No./Mail Date _____ .

    (b) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .

**Identifying indicia** such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____

4. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

5. ☐ Notice of Informal Patent Application

6. ☒ Interview Summary (PTO-413), Paper No./Mail Date *20090831*

7. ☒ Examiner's Amendment/Comment

8. ☒ Examiner's Statement of Reasons for Allowance

9. ☐ Other _____ .

| /Bruce H Hess/ <br> Primary Examiner, Art Unit 1794 | /DJJ/ <br> Examiner, Art Unit 1794 |
| --- | --- |

MUCC000225

| *Interview Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 11/380,762 | LAPRADE, JEAN-PAUL |
| | Examiner | Art Unit | |
| | David J. Joy | 1794 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) *David J. Joy*.                                    (3)_____.

(2) *David E. Jeffries, Reg. No. 46,800*.             (4)_____.

Date of Interview: *31 August 2009*.

Type:  a)☒ Telephonic   b)☐  Video Conference
       c)☐ Personal [copy given to: 1)☐ applicant   2)☐ applicant's representative]

Exhibit shown or demonstration conducted:   d)☐ Yes   e)☒ No.
    If Yes, brief description: _____.

Claim(s) discussed: *1-23*.

Identification of prior art discussed: *n/a*.

Agreement with respect to the claims f)☒ was reached.   g)☐ was not reached.   h)☐ N/A.

Substance of Interview including description of the general nature of what was agreed to if an agreement was reached, or any other comments: *Examiner and Applicant's Representative discussed an amendment to the language of Claim 1. Specifically, Examiner suggested that two commas needed to be deleted from the claim, in order to clarify the language of the claim and make it grammatically correct. Applicant's Representative did not have any objection to the amendment being made to the claim language.*

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims allowable, if available, must be attached. Also, where no copy of the amendments that would render the claims allowable is available, a summary thereof must be attached.)

THE FORMAL WRITTEN REPLY TO THE LAST OFFICE ACTION MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW. (See MPEP Section 713.04). If a reply to the last Office action has already been filed, APPLICANT IS GIVEN A NON-EXTENDABLE PERIOD OF THE LONGER OF ONE MONTH OR THIRTY DAYS FROM THIS INTERVIEW DATE, OR THE MAILING DATE OF THIS INTERVIEW SUMMARY FORM, WHICHEVER IS LATER, TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW. See Summary of Record of Interview requirements on reverse side or on attached sheet.

| /Bruce H Hess/ | /DJJ/ |
|---|---|
| Primary Examiner, Art Unit 1794 | Examiner, Art Unit 1794 |

U.S. Patent and Trademark Office
PTOL-413 (Rev. 04-03)                    Interview Summary                    Paper No. 20090831

MUCC000226

Application/Control Number: 11/380,762                                    Page 2
Art Unit: 1794

EXAMINER'S AMENDMENT

1.      An examiner's amendment to the record appears below. Should the changes

and/or additions be unacceptable to applicant, an amendment may be filed as provided

by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be submitted

no later than the payment of the issue fee.


2.      Authorization for this examiner's amendment was given in a telephone

interview with David E. Jeffries on August 31, 2009.


3.      The application has been amended as follows: Please amend Claim 1 as follows:

a.      Delete the commas at the ends of Lines 3 and 4 so that section **(b)** of the

claim reads:

**(b) a transfer portion over said support portion for transfer of the
transfer portion from the support portion to an article that has not
undergone an oxidizing treatment upon application of heat to the
support portion while the transfer portion is placed into contact with
the article, said transfer portion including at least**

MUCC000227

Application/Control Number: 11/380,762                         Page 3
Art Unit: 1794

### *Continued Examination Under 37 CFR 1.114*

4.     A request for continued examination under 37 CFR 1.114, including the fee set

forth in 37 CFR 1.17(e), was filed in this application after final rejection. Since this

application is eligible for continued examination under 37 CFR 1.114, and the fee set

forth in 37 CFR 1.17(e) has been timely paid, the finality of the previous Office action

has been withdrawn pursuant to 37 CFR 1.114. Applicant's submission filed on June 17,

2009 has been entered.

### *Response to Amendment*

5.     Applicant's amendment to Claim 3, in the amendment filed on June 17, 2009,

obviates the previously cited rejection under 35 U.S.C. §112. As such, the rejection of

Claim 3 under 35 U.S.C. §112, first paragraph, as failing to comply with the written

description requirement, has been withdrawn.

6.     Applicant's cancellation of Claims 7, 8, 10, 11 and 24, in the amendment filed on

June 17, 2009, renders the previously cited rejection under 35 U.S.C. §112 moot.

Consequently, the rejection of Claims 7, 8, 10, 11 and 24 under 35 U.S.C. §112, first

paragraph, as failing to comply with the written description requirement, has been

withdrawn.

Application/Control Number: 11/380,762                                    Page 4
Art Unit: 1794

7.      Applicant's amendment to Claim 21, in the amendment filed on June 17, 2009,

obviates the previously cited rejection under 35 U.S.C. §112. Therefore, the rejection of

Claim 21 under 35 U.S.C. §112, first paragraph, as failing to comply with the written

description requirement, has been withdrawn.


                              *Allowable Subject Matter*

8.      Claims 1-6, 9 and 12-23 are allowed.


                    *Examiner's Statement of Reasons for Allowance*

9.      The following is an examiner's statement of reasons for allowance: All of the

claims in the instant application are allowable for the reasons set forth in Applicant's

remarks made on pages 7-11 and 12-15 of the amendment filed on June 17, 2009. Based

upon the amendments made to the claims and the remarks made in the amendment

filed on June 17, 2009, the U.S. Patent of Magnotta (4,557,964) is now the closest prior art

to that which is claimed in the instant application.


10.     Any comments considered necessary by applicant must be submitted no later

than the payment of the issue fee and, to avoid processing delays, should preferably

Application/Control Number: 11/380,762                                      Page 5
Art Unit: 1794

accompany the issue fee. Such submissions should be clearly labeled "Comments on

Statement of Reasons for Allowance."

*Conclusion*

11.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to David J. Joy whose telephone number is (571) 272-9056.

The examiner can normally be reached on Monday - Friday, 7:00 AM - 3:30 PM EST.

12.      If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Mark Ruthkosky can be reached on (571) 272-1291. The fax phone number

for the organization where this application or proceeding is assigned is 571-273-8300.

13.      Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system. Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

MUCC000230

Application/Control Number: 11/380,762                                    Page 6
Art Unit: 1794

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/DJJ/
Examiner, Art Unit 1794
08/28/2009

/Bruce H Hess/
Primary Examiner, Art Unit 1794

MUCC000231

# EXHIBIT B5

Case: 1:10-cv-00280-SJD Doc #: 29-3 Filed: 08/15/11 Page: 73 of 73  PAGEID #: 226

**oxherd** /'ɒks,hɜːd/ ▸ n. archaic a cowherd. ◾Old English, from ox + obsolete herd 'herdsman.'

**ox-hide** /'ɒks,haɪd/ ▸ n. leather made from the hide of an ox.

**ox-ide** /'ɒksʌɪd/ ▸ n. Chemistry a binary compound of oxygen with another element or group. ◾Late 18th cent.: from French, from oxygène 'oxygen' + -ide (as in acide 'acid').

**ox-i-dize** /'ɒksɪ,dʌɪz/ ▸ v. combine or become combined chemically with oxygen: [trans.] when coal is burned any sulfur is oxidized to sulfur dioxide | [intrans.] the fats in the food will oxidize, turning it rancid. ■ Chemistry undergo or cause to undergo a reaction in which electrons are lost to another species. The opposite of REDUCE. —ox-i-diz-a-ble adj. —ox-i-di-za-tion /,ɒksɪdɪ'zeɪʃən/ n. —ox-i-diz-er n.

**ox-i-diz-ing a-gent** /'ɒksɪ,dʌɪzɪŋ/ ▸ n. Chemistry a substance that tends to bring about oxidation by being reduced and gaining electrons.

**ox-i-me-ter** /ɒk'sɪmɪtər/ ▸ n. an instrument for measuring the proportion of oxygenated hemoglobin in the blood. —ox-i-me-try /tri/ n.

**ox-i-sol** /'ɒksɪ,sɒl; -,sɔːl/ ▸ n. Soil Science a soil of an order comprising stable, highly weathered, tropical mineral soils with highly oxidized subsurface horizons. ◾1960s: from OXI- + SOL.

**ox-lip** /'ɒkslɪp/ ▸ n. a woodland Eurasian primula with yellow flowers that hang down one side of the stem. ● Primula elatior, family Primulaceae. ■ (also false oxlip) a natural hybrid between a primrose and a cowslip. ◾Old English: from oxa 'ox' + slyppe 'slime'; compare with COWSLIP.

**Ox-nard** /'ɒks,nɑːrd/ a city in southwestern California, northwest of Los Angeles, on the Pacific coast; pop. 142,216.

**Ox-on** /'ɒksən/ ▸ abbr. (esp. in degree titles) of Oxford University: BA, Oxon. ◾from medieval Latin Oxoniensis, from Oxonia (see OXONIAN).

**Ox-o-ni-an** /ɒk'soʊniən; -'soʊnjən/ ▸ adj. of or relating to Oxford, England, or Oxford University. ▸ n. a native or inhabitant of Oxford, England. ■ someone who attends or has a degree from Oxford University. ◾mid 16th cent.: from Oxonia (Latinized name of Oxford, from its old form Oxenford) + -AN.

**ox-peck-er** /'ɒks,pɛkər/ ▸ n. a brown African bird related to the starlings, feeding on parasites that infest the skins of large grazing mammals. ● Genus Buphagus, family Sturnidae (or Buphagidae): two species.

**ox-tail** /'ɒks,teɪl/ ▸ n. the tail of a cow. ■ meat from this, used esp. for making soup.

**ox-ter** /'ɒkstər/ ▸ n. Scottish & N. English a person's armpit. ◾Old English ōxta, ōhsta.

**ox-tongue** ▸ n. an Old World plant of the daisy family with yellow dandelionlike flowers and prickly hairs on the stem and leaves. ● Genus Picris, family Compositae: several species, including the bristly ox-tongue (P. echioides), introduced to and now common in California.

**Ox-us** /'ɒksəs/ ancient name for AMU DARYA.

**ox-y-** /'ɒksi/ ▸ comb. form denoting sharpness: oxytone. ◾from Greek oxus 'sharp.'

**ox-y-** /'ɒksi/ ▸ comb. form Chemistry representing OXYGEN.

**ox-y-acet-y-lene** /,ɒksiə'sɛtɪ,liːn; -,lɪn/ ▸ adj. [attrib.] of or denoting welding or cutting techniques using a very hot flame produced by mixing acetylene and oxygen.

**ox-y-ac-id** /'ɒksi'æsɪd/ ▸ n. Chemistry an inorganic acid whose molecules contain oxygen, such as sulfuric or nitric acid.

**ox-y-an-ion** /'ɒksi'ænɪən/ ▸ n. Chemistry an anion containing one or more oxygen atoms bonded to another element (as in the sulfate and carbonate ions).

**Oxy-Con-tin** /'ɒksi'kɒntɪn/ ▸ n. trademark a synthetic analgesic drug that is similar to morphine in its effects and subject to abuse and addiction.

**ox-y-gen** /'ɒksɪdʒən/ ▸ n. a colorless, odorless reactive gas, the chemical element of atomic number 8 and the life-supporting component of the air. Oxygen forms about 20 percent of the earth's atmosphere, and is the most abundant element in the earth's crust, mainly in the form of oxides, silicates, and carbonates. (Symbol: O) ◾Late 18th cent.: from French (principe) oxygène 'acidifying constituent' (because at first it was held to be the essential component in the formation of acids). —ox-y-ge-nous /ɑːk'sɪdʒənəs/ adj.

**ox-y-gen-ate** /'ɒksɪdʒə,neɪt/ ▸ v. [trans.] supply, treat, charge, or enrich with oxygen: [as adj.] (oxygenated) a good supply of oxygenated blood. ◾Late 18th cent.: from French oxygéner 'supply with oxygen' + -ATE. —ox-y-gen-a-tion /,ɒksɪdʒə'neɪʃən/ n.

**ox-y-gen-a-tor** /'ɒksɪdʒə,neɪtər/ ▸ n. Medicine an apparatus for oxygenating the blood. ■ an aquatic plant that enriches the surrounding water with oxygen, esp. in a pond or aquarium.

**ox-y-gen bar** ▸ n. an establishment where people pay to inhale pure oxygen for its reputedly therapeutic effects.

**ox-y-gen-ize** /'ɒksɪdʒə,nʌɪz/ ▸ v. alternate term for OXYGENATE.

**ox-y-gen mask** ▸ n. a mask placed over the nose and mouth and connected to a supply of oxygen, used when the body is not able to gain enough oxygen by breathing air, for example at high altitudes or because of a medical condition.



oxygen mask

**ox-y-gen tent** ▸ n. a flexible enclosure within which the air supply can be enriched with oxygen to aid a patient's breathing.

**ox-y-he-mo-glo-bin** /,ɒksi'hiːmə,ɡloʊbɪn/ ▸ n. Biochemistry a bright red substance formed by the combination of hemoglobin with oxygen, present in oxygenated blood.

**ox-y-mo-ron** /,ɒksi'mɔːrɑːn/ ▸ n. a figure of speech in which apparently contradictory terms appear in conjunction (e.g., faith unfaithful kept him falsely true). ◾mid 17th cent.: from Greek oxumōron, neuter (used as a noun) of oxumōros 'pointedly foolish,' from oxus 'sharp' + mōros 'foolish.' —ox-y-mo-ron-ic /-mə'rɑːnɪk/ adj.

**ox-y-n-tic** /ɒk'sɪntɪk/ ▸ adj. of or denoting the secretory cells that produce hydrochloric acid in the main part of the stomach, or the glands that they compose. ◾Late 19th cent.: from Greek oxuntos (verbal noun from oxunein 'sharpen') + -IC.

**ox-y-te-tra-cy-cline** /,ɒksi,tɛtrə'sʌɪkliːn/ ▸ n. Medicine an antibiotic related to tetracycline, used to treat a variety of bacterial infections.

**ox-y-to-cin** /,ɒksə'toʊsɪn/ ▸ n. Biochemistry a hormone released by the pituitary gland that causes increased contraction of the uterus during labor and stimulates the ejection of milk into the ducts of the breasts. ◾1920s: from Greek oxutokia 'sudden delivery' (from oxus 'sharp' + tokos 'childbirth') + -IN.

**ox-y-tone** /'ɒksɪ,toʊn/ ▸ adj. (esp. in ancient Greek) having an acute accent on the last syllable. ▸ n. a word of this kind. ◾mid 18th cent.: from Greek oxutonos, from oxus 'sharp' + tonos 'tone.'

**oy** /ɔɪ/ ▸ exclam. 1 set or VEY. 2 variant spelling of OI.

**o-yer and ter-mi-ner** /'ɔɪər ænd 'tɜːrmɪnər/ ▸ n. historical a court authorized to hear certain criminal cases. ◾Late Middle English: from Anglo-Norman French oyer et terminer 'hear and determine.'

**o-yez** /'oʊjɛ; 'oʊjɛz/ (also o-yes) ▸ exclam. a call given by a court officer, or formerly by public criers, typically repeated two or three times to command silence and attention, as before court is in session. ◾Late Middle English: from Old French oiez, oyez 'hear!,' imperative plural of oïr, from Latin audire 'hear.'

**oys-ter** /'ɔɪstər/ ▸ n. 1 any of a number of bivalve

mollusks with rough irregular shells. Several kinds are eaten (esp. raw) as a delicacy and may be farmed for food or pearls. ■ a true oyster (family Ostreidae), in particular the edible American oyster (Crassostrea virginica). ■ (with adj.) a similar bivalve of another family, in particular the thorny oysters (Spondylidae), wing oysters (Pteriidae), and saddle oysters (Anomiidae). ■ the color oyster white. 2 an oyster-shaped morsel of meat on each side of the backbone in poultry.
■ v. [intrans.] raise, dredge, or gather oysters: [as n.] (oystering) oystering is still the lifeblood of this town.
■ adj. [attrib.] of the color oyster white. ◾Middle English: from Old French oistre, via Latin from Greek ostreon; related to osteon 'bone' and ostrakon 'shell or tile.'
▸ PHRASE ◻ the world is your oyster you are in a position to take the opportunities that life has to offer. [from Shakespeare's Merry Wives of Windsor (II. ii. 5).]

**oys-ter bar** ▸ n. 1 a hotel bar, small restaurant, or other place where oysters are served. 2 esp. in the southeastern U.S.) an oyster bed.

**Oys-ter Bay** a town in central Long Island in New York that includes the villages of Hicksville, Farmingdale, and Oyster Bay; pop. 292,657.

**oys-ter bed** ▸ n. a part of the sea bottom where oysters breed or are bred.

**oys-ter-catch-er** /'ɔɪstər,kætʃər/ ▸ n. a coastal wading bird with black-and-white or all-black plumage and a strong orange-red bill, feeding chiefly on shellfish. ● Family Haematopodidae and genus Haematopus: several species, e.g., the black and white H. ostralegus of Eurasia.

**oys-ter crab** ▸ n. a minute, soft-bodied crab that lives inside the shell of a bivalve mollusk, where it filters food particles from the water drawn into the shell by its host. Also called PEA CRAB. ● Family Pinnotheridae: Pinnotheres and other genera.

**oys-ter crack-er** ▸ n. a small, round soda cracker served with soup, oysters, etc.

**oys-ter farm** ▸ n. an area of the seabed used for breeding oysters.

**oys-ter-man** /'ɔɪstərmən/ ▸ n. a person who gathers, cultivates, or sells oysters. ■ a boat equipped for harvesting oysters.

**oys-ter mush-room** ▸ n. a widely distributed edible fungus that has a grayish-brown, oyster-shaped cap and a very short or absent stem, growing on the wood of broad-leaved trees and causing rot. ● Pleurotus ostreatus, family Pleurotaceae, class Hymenomycetes.

**oys-ter plant** ▸ n. another term for SALSIFY.

**oys-ter sauce** ▸ n. a sauce made with oysters and soy sauce, used esp. in oriental cooking.

**oys-ters Rocke-fel-ler** ▸ plural n. oysters covered with a mixture of spinach, butter, seasonings, and bread crumbs and cooked on the half shell.

**oys-ter white** ▸ n. a shade of grayish-white.

**oy vey** /ɔɪ 'veɪ/ (also oy) ▸ exclam. indicating dismay or grief. ◾late 19th cent.: Yiddish, literally 'oh woe.'

**Oz** /ɒz/ Austral. informal adj. Australian.

■ n. Australia. ■ a person from Australia. ◾1940s: representing a pronunciation of an abbreviation of AUSTRALIA.

**oz.** ▸ abbr. ounce(s). ◾from Italian onza 'ounce.'

**O-za-lid** /'oʊzə,lɪd/ ▸ n. trademark a photocopy made by a process in which a diazonium salt and coupler are present in the paper coating, so that the image develops in the presence of ammonia. ◾1920s: by reversal of DIAZO and insertion of -L-.

**oz. ap.** ▸ abbr. apothecaries' ounce.

**O-zark Moun-tains** /'oʊ,zɑːrk/ (also the Ozarks) a heavily forested highland plateau dissected by river, valley, and streams, lying between the Missouri and Arkansas rivers and within the states of Missouri, Arkansas, Oklahoma, Kansas, and Illinois.

**oz. av.** ▸ abbr. avoirdupois ounce.

**O-za-wa** /oʊ'zɑːwə/, Seiji (1935– ), Japanese conductor. He was conductor of the Toronto Symphony Orchestra 1965–70, music director and conductor of the Boston Symphony Orchestra 1973–2002, in 2002 he became musical director of the Vienna State Opera. He also conducts frequently with major symphony and opera companies.

**O-zick** /'oʊ,zɪk/, Cynthia (1928– ), U.S. writer and



Pronunciation Key a ago; ār aver; ā a; ar a age; 'ar or; er furr; ã hat; ā rate; ã care; ār char; o ob; ā see; ō sir; ô sir; î fit; î by; î/ô ear; ng sing; ō go; ô for; oi boy; ōō good; ōō goo; ou out; sh she; th thin; ṯh then; ⁞ḫ why; zh vision

MUCC 012982